NO. 07-09-0213-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL A

 AUGUST 31, 2010

 WEST TEXAS HOSPITALITY, INC. D/B/A
 ENERSERV CONSULTANTS, APPELLANT

 v.

 ENERCON INTERNATIONAL, INC.
 AND PAUL SAXTON, APPELLEES

 FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2008-545,369; HONORABLE WILLIAM SOWDER, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION

 Appellant, West Texas Hospitality, Inc. d/b/a WTH Consultants ("WTH"), appeals the trial
court's order issued in favor of Appellee, Enercon International, Inc. and Paul Saxton (collectively
"Enercon") dismissing WTH's suit based upon a forum selection clause in a written contract. In a
single issue, WTH asserts the trial court erred in its finding that there was an enforceable written
contract between the parties. We reverse and remand for further proceedings consistent with this
opinion.

 Background

 In February 2008, WTH[1] filed its Original Petition alleging Enercon[2] wrongfully retained
monies paid by WTH in anticipation of execution of a written contractual agreement. WTH asserted
actions for conversion, collection, and quantum meruit/unjust enrichment. In its Amended Special
Appearance, Motion to Dismiss, and Original Answer filed in January 2009, Enercon sought to dismiss
WTH's suit based upon a forum-selection clause contained in a written agreement which required any
suit to be filed in Minnehaha County, South Dakota. WTH responded by contending that there was no
written agreement because Enercon never signed the proposed contract as presented by WTH. In
support of their respective arguments, the parties submitted evidence through affidavits and
exhibits attached to their pleadings.

 In January 2008, WTH approached Enercon asking for a proposed contract to review. Enercon
offered its "Authorized Affiliate Agreement" ("Agreement"). Among other things, the Agreement
provided that WTH would pay $43,900 to Enercon[3] in return for the right to sell Enercon products
throughout the United States on a non-exclusive basis in addition to receiving training, customer
support, a demonstration kit, startup quantities of Enercon's promotional materials and a "product
credit" up to $45,000. WTH's "product credit" would be used on materials and services purchased
from Enercon for projects approved by Enercon within 120 days of completion of WTH's initial
training. The Agreement also provided, in pertinent part, as follows:

 14. CHANGES TO AGREEMENT: This agreement may not be changed except by written consent of all
 parties and may not be changed orally.

 16. ACCEPTANCE OF CONTRACT AND EXECUTION DATE: [WTH] shall sign duplicate originals of the
 Agreement and submit both originals with full payment to [Enercon]. Should [Enercon] reject
 the Agreement, [WTH] will be notified of such fact in writing and full payment shall be
 returned promptly. Should [Enercon] accept the agreement, [Enercon] will date and sign the
 duplicate originals of the agreement submitted and return one of the fully executed originals
 for [WTH] at [WTH's] address shown above. The Agreement shall be binding upon all parties the
 date [Enercon] dates and signs the duplicate originals, which shall be the "execution date of
 the Agreement." [WTH] shall have a right of rescission for three days from the date of the
 agreement.

 18. SOLE AGREEMENT: There are no other agreements or understandings, either oral or in
 writing between the parties effecting this agreement or relating to the sale of the Product(s),
 except as otherwise specifically provided herein . . . . This agreement contains all the oral
 written agreements, representations and arrangements between the parties hereto. It is
 understood between the parties that there are no representations or warranties made or implied
 except as specifically set forth herein.

 21. SUIT VENUE: This agreement is performable in Minnehaha County, South Dakota. Any claim,
 cause of action, or other legal suit arising from, or as a result of this agreement shall be
 brought in State Court in Minnehaha County, South Dakota . . . .

 24. EXECUTION KNOWING AND VOLUNTARY: The parties hereby acknowledge and represent that they
 (a) have fully and carefully read this agreement prior to execution; (b) have been, or have had
 the opportunity to be fully apprised by any attorneys of their choice of the legal effects and
 meaning of this document and all terms and conditions hereof, . . . (d) are executing this
 agreement with full knowledge of the ramifications thereof.

 30. SUPERCEDE: This contract supercedes and replaces any previous contract or agreement
 between the parties herein.

 The Agreement also contained two signature blocks, one each for Enercon and WTH. Each
signature block was prefaced by the statement "Accepted by [Enercon]" and "Accepted by [WTH],"
respectively.

 Kirit Desai, on behalf of WTH, made a number of handwritten changes to the proposed contract.
Specifically, he extended the time within which Enercon was required to apply WTH's "product credit"
from 120 days to 150 days of completion of WTH's initial training. He also amended the Agreement's
terms regarding termination as follows: "This agreement may also be terminated by circumstances
beyond [Enercon's] control that make it impossible or impractical for the business activities
contemplated by this agreement to be continued, in which case the remaining balance from the
payments made will be refunded if termination happens within 150 days from the payment." (Emphasis
supplied on handwritten changes). In addition, Desai amended a number of the time-specific
provisions in the termination paragraph to make ten day time limits, ten business days. (Emphasis
supplied on handwritten changes).

 On March 3, 2008, Desai signed the modified contract and, on March 4, wired his first
installment of $26,000. The following day, Enercon received the modified contract signed by WTH and
invoiced WTH for $43,900.[4] Prior to making their second installment payment, WTH ordered $5,000
worth of Enercon products. Enercon responded by invoicing WTH for "HiBrite Fixtures, Lamps, Retro
Kit and freight, $5002.75," and stamped the invoice "PAID."

 On April 7, Desai sent an internal e-mail to another WTH officer, and expressed concern that
they had "not received a signed copy of [their] agreement with Enercon." Desai wanted to start a
countdown of the number of days remaining to recover their $43,900 from Enercon, i.e., "[h]ow much
time we have left and how much sales we have to generate within that time."

 On April 7, Enercon and WTH exchanged a number of e-mails related to the deadline for WTH's
"product credit." Paul Saxton sent an e-mail to Desai indicating that WTH's "product credit" was
good for 120 days from completion of WTH's initial training. In response, Desai indicated that he
had altered the Agreement as tendered by Enercon to permit WTH 150 days on the "product credit"
deadline. Desai also indicated that his calculations indicated the "product credit" would not
expire until August 18 and asked Saxton to verify there was a $42,000 "product credit" remaining.
Saxton responded to Desai saying: "Did I sign that? I don't recall . . . I don't know why this
would have been changed as we already increased it to 120 days from the usual 90 days."

 On May 6, WTH made a second installment payment to Enercon, deducting $5,002.75 for the
products purchased in March. WTH also requested Enercon's services to design projects and Enercon
invoiced WTH for their services.[5]

 In August, WTH had yet to receive an executed copy of the Agreement as amended by Desai and
the deadline was approaching for WTH's use of its "product credit." On August 4, Desai sent an e-
mail to Saxton indicating that the "product credit" deadline was approaching and asked for an
extension to complete a project and close on others. Saxton responded he had checked the Agreement
and the "product credit" deadline of 120 days had already expired. Desai responded by sending a
copy of his amendments to the Agreement and asserted that the "product credit" deadline of 150 days
had not expired. Desai's calculations indicated that WTH had until August 18 to use the remaining
credit of $42,000.[6]

 On August 25, Desai received a letter from Enercon's attorney stating, in pertinent part, as
follows:

 I am writing with regard to invoices/purchase orders you recently sent to our client. My
 client is unable to fill the orders as submitted on your desired terms for three reasons.

 First, as my client noted in prior correspondence, the invoices/purchase orders you submitted
 were submitted outside of the 120-day-product-credit window set forth in the Enercon Affiliate
 Agreement as it was offered to you. The unauthorized alterations you made to the Agreement
 that you signed were not effective to extend this period.

 Second, as noted in the Affiliation Agreement, your product credit must be used "only on
 complete Enercon approved, engineered, and designed products." The document you have submitted
 are for products and quantities vastly different from those approved by my client.

 Third, your orders involve at least one entity that my client has never heard of and therefore
 could not have possibly approved.

 My client therefore cannot provide these materials as currently requested on a product-credit
 basis.

 Following submission of the parties' pleadings and exhibits, the trial court heard counsel's
argument in a short hearing on Enercon's motion to dismiss. Enercon acknowledged that it did not
sign the Agreement but asserted WTH was bound by its terms because WTH had signed. Although the
Agreement signed by WTH contained Desai's changes, Enercon contended WTH performed under their
Agreement without the changes made by Desai. WTH contended the contract signed by Desai and
returned to Enercon was a counter-offer that was not accepted because it was never signed by
Enercon. WTH asserted that, because the counter-offer was not executed by Enercon, there was no
written agreement between the two companies and the forum selection clause was unenforceable.

 Thereafter, the trial court entered its order denying Enercon's Special Appearance and
granting Enercon's motion to dismiss stating "[t]his dismissal is based upon the forum selection
clause contained in the Authorized Affiliate Agreement between the parties." This appeal followed.

 Standard of Review

 A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause
against a party to the contract who violated the clause in filing suit. Ramsay v. Tex. Trading Co.,
254 S.W.3d 620, 626 (Tex.App.--Texarkana 2008, pet. denied). While we review the trial court's
ruling on a motion to dismiss for abuse of discretion; see In re Lyon Fin. Servs., 257 S.W.3d 228,
231-32 (Tex. 2008) (per curiam), to the extent that our review involves the construction or
interpretation of an unambiguous contract, the standard of review is de novo. Phoenix Network
Techs. (Europe) Ltd. v. Neon Sys., Inc., 177 S.W.3d 605, 610 (Tex.App.--Houston [1st Dist.] 2005, no
pet.). This is so because "a trial court has no 'discretion' in determining what the law is or
applying the law to the facts"; Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992), and "abuses its
discretion" if it misinterprets or misapplies the law. Perry Homes v. Cull, 258 S.W.3d 580, 598
(Tex. 2008).

 Forum-selection Clause

 The trial court's order does not contain a specific finding of the existence of a written
agreement, nor did the trial court make findings of fact and conclusions of law. However, as the
parties' briefs make clear, the trial court's order of dismissal clearly rests on the legal
conclusion that WTH is bound to the forum-selection clause in the Agreement on which Enercon relies.

 As the party seeking to enforce a contractual forum-selection clause, Enercon had the initial
burden of establishing that it and WTH agreed to an exclusive forum and the agreement applied to
WTH's claims. Phoenix Network, 177 S.W.3d at 611-12 & n.6. See Barnett v. Network Solutions, Inc.,
38 S.W.3d 200, 203 (Tex.App.--Eastland 2001, pet. denied).[7] If Enercon met these prerequisites,
the burden would then shift to WTH to make a "strong showing" overcoming the prima facie validity of
the forum-selection clause. Phoenix Network, 177 S.W.3d at 611.

 To establish the existence of an enforceable contract, a party must prove (1) an offer, (2)
acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter
and essential terms of the contract, and (4) consideration, or mutuality of obligations. See
Domingo v. Mitchell, 257 S.W.3d 34, 39 (Tex.App.--Amarillo 2008, pet. denied). In determining
whether the parties have formed a contract through offer, acceptance and mutual assent to the
contract terms, we rely on the objective standard of what the parties said and how they acted, not
on their subjective state of mind. Id.; Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings,
Inc., 219 S.W.3d 563, 589 (Tex.App.-Austin 2007, pet. denied). Moreover, as with any other
contract, "the parties' intent is governed by what they said, not by what they intended to say but
did not." Feiss v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006) (emphasis in original).

 Enercon's initial offer, the Agreement, expressly states WTH must accept by signing "duplicate
originals of the Agreement." (Emphasis added). Thereafter, Enercon would accept by "dat[ing] and
sign[ing] the duplicate originals of the agreement submitted and return one of the fully executed
originals for [WTH] at [WTH's] address shown above." The Agreement then would "be binding upon all
parties the date [Enercon] dates and signs the duplicate originals, which date shall be the
'execution date of Agreement.'" As such, the Agreement would be the parties' "sole agreement,"
embodying "all representations or warranties made or implied except as specifically set forth
[therein]." Any changes to its terms were required to be "by written consent of all parties."

 The unambiguous language of the Agreement, then, required that Enercon sign, date, and deliver
a duplicate original to WTH before it became an enforceable contract binding on either party. "If
an instrument, even though signed, is delivered with the understanding that it is not to be binding
as a contract until signed by another, the failure of the other person to sign the instrument
destroys the very existence of the contract." Baccus v. Plains Cotton Cooperative Association, 515
S.W.2d 401, 402-03 (Tex.App.--Amarillo 1974, no writ) (citing Thomason v. Berry, 276 S.W. 185 (Tex.
Comm'n App. 1925, judgmt. adopted)).[8] Because Enercon failed to offer any evidence that it signed
and delivered[9] the Agreement to WTH in the manner required, Enercon failed in its initial burden
of proving the parties mutually assented to the Agreement or the forum-selection clause contained
therein.

 Furthermore, although WTH signed the Agreement, Desai did so only after altering its terms.
See Paragraph 16 of the Agreement ("Affiliate shall sign duplicate originals of the Agreement"). As
such, Enercon also failed to offer any evidence WTH ever accepted Enercon's original offer--the
Agreement.[10]

 Enercon asserts that WTH's orders for goods and services constituted acceptance of the
original Agreement. However, while the invoices, themselves, could be evidence of individual
contracts in their own right; see A.F. Knight v. Virginia Mirror Co., 463 S.W.2d 428, 429 (Tex.
1971); F.H. Berry v. Pierce Petroleum Corp., 120 Tex. 452, 39 S.W.2d 824, 825-26 (1931), they may
not act as a substitute for acceptance under the Agreement because the subject matter of the
Agreement does not permit acceptance by any other means including performance. Neither was there
any evidence of any change to the method of acceptance by "written consent of all parties."[11] To
the contrary, in his letter to WTH, Enercon's attorney relies on the terms of the original Agreement
offered to WTH while describing Desai's handwritten terms as "unauthorized alterations."

 While Enercon correctly points out that "it is not necessary in order to constitute a
'contract in writing' that the agreement be signed by both parties; one may sign and the other may
accept by his acts, conduct or acquiescence in the terms of the agreement"; see Pierce v. Pickett,
432 S.W.2d 586, 589 (Tex.Civ.App.--Amarillo 1968, no writ), this rule does not apply here where "at
least one of the parties has sufficiently expressed his intention not to be bound without [a
signature]," and "the parties have made [signatures] necessary at the time they express their assent
and as a condition modifying that assent." Simmons, 286 S.W.2d at 418 (quoting Corbin on Contracts,
Vol. 1, §§ 31 and 32, pp. 85 and 92). Here, in the absence of the written consent of the parties to
a different mode of acceptance, Enercon and WTH were expressly required to sign and deliver the
Agreement to each other before there was an enforceable contract. Id. at 418-19.[12] See
Birchminster, 517 S.W.2d at 612.

 WTH's response to Enercon's motion to dismiss and arguments made by WTH's counsel at the
hearing belie Enercon's assertion that WTH waived its argument on appeal that Enercon's signatures
were required before the Agreement would be enforceable. This issue was argued in WTH's pleadings
and at the hearing.[13] The trial court's order stated that it considered the evidence, pleadings
and argument of counsel. As a result, we conclude the issue was not waived. See Tex. R. App. P.
33.1(a). See also Piazza v. City of Granger, 909 S.W.2d 529, 532 (Tex.App.--Austin 1995, no writ)
(issue whether statutory notice was defective not waived where counsel argued notice was invalid and
copy of notice was attached to pleading); FDIC v. Attayi, 745 S.W.2d 939, 942 (Tex.App.--Houston
[1st Dist.] 1988, no writ) (issue whether guarantee agreement specifically provided for renewal not
waived where counsel argued debt in issue had been renewed and copy of guaranty attached to
pleading).[14] Likewise, here, WTH argued the issue and incorporated an attached copy of the
Agreement into its response.

 Because Enercon failed in its initial burden of establishing that the parties mutually
assented to the Agreement or its forum-selection clause, WTH's sole issue is sustained.

 Conclusion

 We reverse the judgment of the trial court and remand for further proceedings consistent with
this opinion.

 Patrick A. Pirtle
 Justice

-----------------------
[1]WTH is a Texas corporation doing business in Lubbock County, Texas. Kirit Desai, WTH's
President, resides in Lubbock County.

[2]Enercon is a South Dakota corporation with its principal place of business in Sioux Falls, South
Dakota. Paul Saxton, Enercon's President, resides in Ohio.

[3]Enercon's proposed Agreement required that WTH pay Enercon two installments equaling $43,900.

[4]The invoice stated "$43,900 for 1 HiBrite Dealership - HiBrite dealership NON EXCLUSIVE, Out-of-
state sale, exempt from sales tax."

[5]These invoices were as follows: (1) dated August 27 and stamped PAID, $400 for 1 Survey Fee
United Supermarket Out-of-state sale, exempt from sales tax; (2) dated August 28 and stamped PAID,
$400 for Sonic Drive-In survey, Out-of-state, exempt from sales tax; (3) dated May 21 and stamped
PAID, $400, 1 Survey Fee, Shamrock Chevrolet Survey, Out-of-state, exempt from sales tax; and (4)
dated May 21 and stamped PAID, $400, 1 Survey Fee, Survey Fee Gene Messer, Out-of-state, exempt from
sales tax.

[6]The record also contains two e-mails between Desai and Nelsi Rodriquez, an Enercon employee.
Desai sent Rodriquez an e-mail stating: "I am sorry I should have called you to let you know that I
found my copy [of the Agreement] on my computer. Thanks for your help." Rodriquez responded: "I
take that you no longer need the affiliate agreement, you found it?"

[7]See also Reuben Lowing v. Williams, No. 07-03-0393-CV, 2005 Tex. App. LEXIS 62, at *5 (Tex.App.--
Amarillo 2005, no pet.) (not designated for publication).

[8]"Evidence of mutual assent in written contracts generally consists of signatures of the parties
and delivery with the intent to bind." Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (Tex. 2007)
(collected cases cited therein). Parties may provide that the signature of each party is a
prerequisite to a binding written contract; In re Bunzl, 155 S.W.3d 202, 209 (Tex.App.--El Paso
2004, no pet.) (citing Corbin on Contracts § 2.10 at 165 (Joseph M. Perillo rev. 1993), and,
"[w]here parties to a written contract intend that it shall not be binding until it is signed by the
parties, the signatures of both parties are required to give effect to the contract." Birchminster
Resources v. Corpus Christi Management Co., 517 S.W.2d 608, 611 (Tex.App.--Corpus Christi 1974, writ
dism'd) (citing Simmons & Simmons Constr. Co. v. Rea, 155 Tex. 353, 286 S.W.2d 415, 418-19 (1955).

[9]Where there is no delivery of the contract, there is no mutual assent and, hence, no contract.
Baylor Univ., 221 S.W.3d at 635. "If the reduction of the agreement to writing is thus made
necessary, an assent to the writing as a sufficient one must also be manifested; this manifestation
commonly consists of signing and delivery." Simmons, 286 S.W.2d at 418. See Baccus, 515 S.W.2d at
402. "An acceptance which resides solely within the exclusive knowledge of the acceptor without
being communicated to the offeror is ordinarily no binding acceptance." Advantage Physical Therapy,
Inc. v. Cruse, 165 S.W.3d 21, 26 (Tex.App.--Houston [14th Dist.] 2005, no pet.). See Tex.
Association of Counties County Government Risk Management Pool v. Matagorda County, 52 S.W.3d 128,
132 (Tex. 2000); Peden Industries v. Dahlstrom Corp., 520 S.W.2d 876, 877 (Tex.App.--Beaumont 1975,
no writ).

[10]"It is an established rule of contracts that when a specific mode of acceptance is given within
an offer, the offeree must convey his acceptance in the precise mode expressed within the offer in
order to create a binding agreement." Abraham Investment Company v. Payne Ranch, Inc., 968 S.W.2d
518, 525 (Tex.App.--Amarillo 1998, pet. denied). See Advantage Physical Therapy, Inc.,v. Cruse, 165
S.W.3d 21, 25 (Tex.App.--Houston [14th Dist.] 2005, no pet.); Morrow v. De Vitt, 160 S.W.2d 977, 983
(Tex.Civ.App.--Amarillo 1942, writ ref'd w.o.m.). "The acceptance must be identical with the offer;
otherwise there is no binding contract;" Domingo v. Mitchell, 257 S.W.3d 34, 39 (Tex.App.--Amarillo
2008, pet. denied); Gilbert d/b/a Consulting Economists v. Pettiette, 838 S.W.2d 890, 893 (Tex.App.--
Houston [1st Dist.] 1992, no writ), and "any attempt to change an offer operates as a rejection and
counteroffer." Komet v. Graves, 40 S.W.3d 596, 601 (Tex.App.--San Antonio 2001, no pet.); Harris v.
Balderas, 27 S.W.3d 71, 77 (Tex.App.--San Antonio 2000, pet. denied). See United Concrete Pipe
Corp. v. Spin-Line Co., 430 S.W.2d 360, 364 (Tex. 1968) ("It is well settled that an acceptance must
not change or qualify the terms of the offer. If it does, the offer is rejected.")

[11]Neither can the e-mails between Desai and Rodriquez constitute any acceptance even if they could
be interpreted as Enercon suggests which is doubtful. Further, the Agreement expressly provided
that it contained "all oral written agreements, representations and arrangements between the parties
hereto."

[12]Neither Bocchi Americas Associates, Inc. v. Commerce Fresh Marketing Inc., 515 F.3d 383 (5th
Cir. 2008) nor McCarty v. C.H. Langdeau, 337 S.W.2d 407 (Tex.App.--Austin 1960, writ ref'd n.r.e.),
are of any avail to Enercon. Neither court was required to determine whether acceptance occurred in
conformity with an express contractual provision requiring the parties' signatures before the
contract was enforceable. See 515 F.3d at 391-92; 337 S.W.2d at 412.

[13]In WTH's response to Enercon's motion to dismiss, WTH asserted "[Enercon] never signed the
[agreement] and never assented to the terms of the [agreement] either verbally or by course of
conduct. . . .  Plaintiff and Defendant have never entered into a written contract." WTH also
incorporated by reference into their response Desai's affidavit and the Agreement including
paragraph "16. ACCEPTANCE OF CONTRACT AND EXECUTION DATE" as well as WTH's internal e-mails wherein
the only method of acceptance discussed was by signature and execution of the Agreement by both
parties. At the hearing, WTH's counsel asserted "[t]here is no contract . . . no meeting of the
minds. . . . He never signed it; the guy never signed it. . . . If there is no contract, then the
Forum Selection Clause is poof."

[14]Neither does Century 21 Real Estate Corp. v. Hometown Real Estate Co., 890 S.W.2d 118, 124
(Tex.App.--Texarkana 1994, writ denied) nor Wohlfahrt v. Holloway, 172 S.W.3d 630, 640 (Tex.App.--
Houston [14th Dist.] 2005, no pet.), cert. denied, 549 U.S. 1052, 127 S.Ct. 666, 166 L.Ed.2d 514
(2006) require a different result as Enercon suggests. In Century 21, the appellate court refused
to allow International to assert on appeal that Hometown was a "consumer" under the DTPA when,
before the trial court, International had asserted only that International was a seller of goods and
services to Hometown. In Wolhlfahrt, the appellate court refused to permit Wohlfahrt to assert on
appeal the court was bound to set post-judgment rates under a statutory provision different than
that argued before the trial court. 172 S.W.2d at 639-40.